USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:  **9/28/20**_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
   GEORGE J. PILIGIAN, MD.,            :
                                               :
                  **Plaintiff,**  :
       -against-             :       **1:17-CV-01975 (ALC)**
                                             :
   ICAHN SCHOOL OF MEDICINE AT MOUNT   :       __OPINION AND ORDER__
   SINAI,                       :
                  **Defendants**  :
                                           :
                                           :
                                           :
                                         :
                                         :
-------------------------------------------------------------x
**ANDREW L. CARTER, JR., United States District Judge:**

     On March 17, 2017, Plaintiff Doctor George Piligian brought the instant action against

Defendant the Icahn School of Medicine at Mount Sinai for federal and state disability

discrimination and retaliation. (ECF No.1). On October 24, 2019, Defendant moved for summary

judgment. (ECF Nos. 54–61). I referred this motion to Magistrate Judge Stewart D. Aaron for a

Report and Recommendation ("R&R"). (*See* ECF No. 62). Judge Aaron issued an R&R on April

7, 2020, recommending that Defendant's motion be granted in part and denied in part. (R&R at

ECF No. 75). Both Plaintiff and Defendant filed objections and responded. I now overrule those

objections and adopt the R&R in full. (ECF Nos. 76–80).

## I. BACKGROUND

     I assume the parties' familiarity with the factual background and procedural history of

this case as laid out in Judge Aaaron's R&R.

**A. Factual Background**

In short, Plaintiff, a board-certified physician, alleges that while working for the Selikoff Center at Mount Sinai Hospital, he began experiencing adverse health effects related to looking at a computer screen, that caused nausea, vertigo, and vomiting. (ECF 73 at ¶ 12). In 2012, Plaintiff was diagnosed with Convergence Insufficiency, an eye disorder. (*Id.* at ¶ 11). According to Plaintiff, Defendant accommodated his condition until 2012 when Dr. Roberto Lucchini became the Chief of Occupational Medicine at Mount Sinai, where Plaintiff worked. At that time, Defendant allegedly implemented new productivity requirements which Plaintiff struggled to satisfy without reasonable accommodations. (Compl. at ¶¶ 7, 8, 41).

In 2013, the Selikoff Center merged with the Hospital's World Trade Center Monitoring Program ("WTC Program"). (Compl. at ¶ 42). Plaintiff had to take on new responsibilities after the merger. Plaintiff's workload, particularly his data-entry responsibilities increased significantly. (*Id.* at ¶¶ 51–53; ECF No. 73 at ¶¶ 32, 34). Plaintiff alleges that because of his eye condition, he struggled to comply with productivity standards and deadlines. (Compl. at ¶¶ 56; ECF No. 73 at ¶¶ 36, 37; Pil. Tr. At 98–99). He contends that the School should have provided him with commensurate accommodations as it was aware of his disability.

Plaintiff alleges that he requested accommodations only for his work in the WTC Program. Specifically, he alleges that in mid-June, he met with Lucchini and requested paper data entry forms, an administrative assistant to transcribe the forms, as well as other reasonable accommodations to allow him to comply with WTC Program data-entry requirements. (Compl. at ¶¶ 59–62; Piligian Decl. at ¶ 66–67). According to Plaintiff, his assistant at the Selikoff Center did not transfer with him to the WTC program. (*See* Piligian Tr. at 161–63). Plaintiff alleges that

Lucchini did not respond to his requests and instructed Plaintiff to continue working. (Compl. at ¶ 63).

On the same day Plaintiff met with Lucchini, Lucchini emailed the WTC Program Administrator and an Administrative Manager at the Selikoff Center, informing them of Plaintiff's difficulties with data entry and asking what was feasible (presumably in terms of accommodations). (ECF No. 66-3). The Administrative Manager responded, indicated that he was under the impression Lucchini had decided not to reappoint Plaintiff, terminating his employment. (*Id.*). The WTC Program Administrator wrote that she told Plaintiff she would provide him with paper forms and the assistance of a patient coordinator for data entry. (*Id.*) Lucchini responded: "Yesterday I told [Piligian] that this is his duty with no help from patient coordinator. If he cannot do it there is no other job and he can leave." (*Id.*)

On June 20, 2013, Lucchini signed a letter to Piligian giving him advanced notice he would not be reappointed and that his current term would end on November 30, 2013. Lucchini gave Plaintiff the letter of non-reappointment on July 1, 2013. (ECF No 73 at ¶¶ 99–100).

**B. Procedural Background**

**1. Complaint**

Plaintiff brought this action in 2017, filing an eight-count complaint alleging: (1) discrimination based on disability in violation of the Americans with Disabilities Act ("ADA"); (2) retaliation in violation of the ADA; (3) discrimination based on disability in violation of Section 504 of the Rehabilitation Act; (4) retaliation in violation of the Rehabilitation Act; (5) discrimination based on disability in violation of the New York State Human Rights Law ("NYSHRL"); (6) retaliation in violation of NYSHRL; (7) discrimination based on disability in

violation of New York City Human Rights Law (NYCHRL); and (8) retaliation in violation of NYCHRL. (Compl. at ¶¶ 75–118).

### 2. Summary Judgment

Following completion of discovery, Defendant moved for summary judgment on all of Plaintiff's claims. (ECF Nos. 54–61). With respect to Plaintiff's disability discrimination claims, Defendant argued first that they were entitled to summary judgment because Plaintiff failed to establish a prima facie case of disability discrimination because he did not show that the decision not to reappoint, or to terminate him, was made based on his disability. (ECF No. 61). Specifically, Defendant argued that the supervisors who decided to fire Plaintiff were unaware of Plaintiff's eye condition, so could not have made the decision on that basis. (*Id.* at 20–23). Further, Defendant contended that even if Plaintiff could establish a prima facie case, his federal and NYSHRL discrimination claims must be dismissed because Defendant demonstrated that Plaintiff was not reappointed for a legitimate, non-discriminatory reason. (*Id.* at 23–25). Second, Defendant argued summary judgment was appropriate on these claims because Plaintiff received every accommodation requested and thus could not establish that Defendant discriminated by failing to reasonably accommodate.

With respect to Plaintiff's federal retaliation claims, Defendant argued that that there was no causal connection between Plaintiff's request for accommodations and the decision not to reappoint him. (ECF No. 61 at 30–31). Specifically, Defendant argued that the two people who decided not to reappoint Plaintiff—Lucchini and Landrigan—were unaware of Plaintiff's eye condition at the time the decision was made, and thus, the non-reappoint decision could not have been retaliatory. (*Id.*) Defendant also seems to have argued that summary judgment is warranted

4

because the decision not to reappoint Plaintiff was premised on performance deficiencies that began and were documented prior to Plaintiff's alleged protected activity.

Finally, Defendant argued that Plaintiff's state law retaliation claims must fail because a request for accommodations is not a protected activity under either the NYSHRL or NYCHRL. (*Id.* at 23–24*).*

### 3. The R&R

Judge Aaron rejected Defendant's arguments as to Plaintiff's disability claims, finding there exists a genuine dispute as to whether Defendant had knowledge of Plaintiff's disability at the time the decision to terminate his employment was made (R&R at 20); that Plaintiff set forth a prima facie case of disability discrimination (*Id.* at 21); and that there exists a genuine dispute as to whether Defendant refused to provide at least some accommodations to Plaintiff (*Id.* at 21–22).

Judge Aaron also rejected Defendant's federal retaliation argument, finding that there exists genuine issues of material fact as to when the non-reappointment decision was made and what the decisionmakers knew about Plaintiff's eye condition at the time. (R&R at 22–23). Judge Aaron also found that there exists genuine issues of material fact as to whether the non-reappointment decision was part of a continuing course of disciplinary conduct that began before Plaintiff engaged in the alleged protected activity. For these reasons, Judge Aaron recommended Defendant's summary judgment be denied as to Plaintiff's federal retaliation claims. (*Id.* at 24).

Finally, Judge Aaron recommended that summary judgment be granted as to Plaintiff's state law retaliation claims. As to Plaintiff' NYSHRL claim, Judge Aaron explained that while retaliation for complaining about the denial of an accommodation request may constitute protected activity under the NYSHRL, a request for accommodation alone does not. Plaintiff

alleged only that he was retaliated against for requesting an accommodation. Accordingly, Judge Aaron concluded, his NYSHRL could not survive summary judgment. (R&R at 25–26).

As for Plaintiff's NYCHRL claim, Judge Aaron also recommended summary judgment be granted. As Judge Aaron explained, in 2018, the New York City Council amended the NYCHRL, to state expressly that a reasonable accommodation request constitutes protected activity. (R&R at 26) (quoting citing New York City, N.Y., Local Law No. 129 Int. No. 799 (2019) (amending § 8-107(7)). The amendment took effect on November 11, 2019. Judge Aaron reasoned that the amendment was not retroactive, and thus, that Plaintiff's retaliation claim based on a request for accommodations should be dismissed. (R&R at 27–28).

## C. Objections

Both parties now raise objections to Judge Aaron's R&R.

### 1. Defendant's Objections

Defendant object to the R&R's recommendations that summary judgment be denied as to Plaintiff's disability discrimination claims. First, Defendant argues that Judge Aaron failed to consider the testimonies of Carlina Melendez, Plaintiff's assistant for most of, and until the end of his employment period, and Julia Nicolaou, the WTC Program Administrator. (ECF 78 at 8, 17–19). According to Defendant, Melendez's testimony makes it evident that Plaintiff was provided every accommodation he requested and that there exists no causation between Plaintiff's termination and disability. (*Id.*)

Second, Defendant argues that the record provides substantial evidence, overlooked by Judge Aaron, establishing that there is no dispute that the connections required to sustain Plaintiff's disability discrimination claims—those among the School's alleged failure to accommodate

Plaintiff, Plaintiff's performance deficiencies, and Plaintiff's termination—did not exist. (ECF No. 78 at 21–22).

Third, Defendant argues the R&R erred in sustaining Plaintiff's federal retaliation claim based on temporal proximity, and for considering a positive performance appraisal Plaintiff received, as evidence undermining Defendant's contention that there was a course of disciplinary conduct against Plaintiff prior to his request for accommodation. (ECF No. 78 at 23–27).

### 2. Plaintiff's Objection

Plaintiff objects to the R&R's recommendation that Plaintiff's NYCHRL claim be dismissed, arguing both that the amendment should be retroactively applied, and that, even pre-amendment, a reasonable accommodation request qualified as protected activity under the plain language of the NYCHRL. (ECF 76).

### LEGAL STANDARDS

### I. Reviewing the R&R

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made" by a magistrate judge in an R&R. 28 U.S.C. § 636(b)(1). Where a party timely and specifically objects, the court conducts a *de novo* review of the contested portions of the R&R. "However, 'when a party makes only conclusory or general objections, or simply reiterates his original arguments,' the court reviews the report and recommendation strictly for clear error." S*yed Mohammad Aftab Kartm, MD, Faans v. New York City Health and Hospitals Corp., et al*, No. 17 Civ. 6888, 2020 WL 2999228, at *3 (S.D.N.Y. June 4, 2020) (quoting *Wallace v. Superintendent of Clinton Corr. Facility*, No. 13 Civ 3989, 2014 WL 2854631, at *1 (S.D.N.Y. June 20, 2014))."

"In addition, 'new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all.'" *Id.* at *3 (quoting *Razzoli v. Fed. Bureau of Prisons*, No. 12 Civ. 3774, 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014).

## II. Summary Judgment

Summary judgment is appropriate only where all submissions, pleadings, affidavits, and discovery materials that are before the Court, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F.Supp.3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the initial burden of showing that there [is] no genuine dispute as to a material fact." *CILP Assocs., L.P.*v. *PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (internal quotation marks and alteration omitted). Courts must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry* v. *Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quotation omitted). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby*, 477 U.S. at 255. Still, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for

the plaintiff." *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quoting *Liberty Lobby*, 477 U.S. at 252).

### III. Disability Discrimination Under the ADA, Rehabilitation Act and NYSHRL

Disability discrimination claims under the Rehabilitation Act and NYSHRL are analyzed under the same standard used for ADA discrimination claims. *See Quadir v. N.Y. State Dep't of Labor*, No. 13 Civ. 3327, 2016 WL 3633406, at *2 (S.D.N.Y. June 29, 2016) (Rehabilitation Act); *Nelson v. City of New York*, No. 11-CV-02732 (JPO), 2013 WL 4437224, at *6 (S.D.N.Y. Aug. 19, 2013) (NYSHRL).

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees . . ." 42 U.S.C. § 12112(a). "Discrimination claims under the ADA may be brought under a theory of adverse employment action or of failure to provide reasonable accommodation." *Berger v. New York City Police Dep't*, 304 F.Supp.3d 360, 368 (S.D.N.Y. 2018).

To set forth a prima facie case of disability discrimination based on an adverse employment action, a plaintiff must demonstrate by a preponderance of the evidence that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered [an] adverse employment action because of his disability." *Krasner v. City of New York*, No. 11 Civ. 2048, 2013 WL 5338558, at *11 (S.D.N.Y. Sept. 23, 2013) (alteration in original) (quoting *Heyman v. Queens Vil. Comm. For Mental Health for Jamaica Community Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999)). Plaintiff must establish that the disability was the "but-for" cause of the adverse action. *Natofsky v. City of New York*, 921 F.3d 337, 349 (2d Cir. 2019).

To set forth a prima facie case of disability discrimination arising from a failure to accommodate, a plaintiff must demonstrate by a preponderance of the evidence that "(1) [P]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009) (alteration in original) (quoting *Graves v. Finch Pruyn & Co., Inc.,* 457 F.3d 181, 184 (2d Cir. 2006)) (quoting *Rodal v. Anesthesia Group of Onondaga, P. C.,* 369 F.3d 113, 118 (2d Cir.2004)).

Disability discrimination claims typically are subject to the *McDonnell-Douglas* burden-shifting analysis, meaning, that when a Plaintiff makes a prima facie case of discrimination, the employer then "must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *McBride*, 583 F.3d at 96 (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). However, as the Second Circuit has explained, where a Plaintiff alleges both a failure to accommodate and a related adverse employment action, this framework is not useful. In other words, where a Plaintiff alleges that an employer failed to accommodate a disability, and that the failure to accommodate caused the conduct upon which termination was based, there is no need to determine whether the proffered reason for discharge was pretext.

Instead, in actions where both an adverse action and failure to accommodate are alleged, "the plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his] employment.'"

*McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) (alterations in original) (quoting *McBride*, 583 F.3d at 97). Additionally, "plaintiff [also] must show 'the *connections* between (1) the failure to accommodate a disability, (2) the performance deficiencies, and (3) the adverse employment action.'" *Natofsky,* 921 F.3d at 352 (quoting *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 108 (2d Cir. 2001) (emphasis in original).

## IV. Disability Discrimination Under the NYCHRL

"[C]ourts must analyze NYCHRL claims independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux North America, Inc*., 715 F.3d 102, 109 (2d Cir. 2013). "The NYCHRL creates a lower threshold for actionable conduct and must be construed liberally in favor of discrimination plaintiffs, meaning that a defendant may be liable under the NYCHRL but not under state or federal statutes." *Cain v. Estheique*, 182 F. Supp.3d 54, 71 (S.D.N.Y. 2016). A plaintiff must, by a preponderance of the evidence, show only that he was treated "less well, at least in part for a discriminatory reason." *Benzinger v. Lukeoil Pan Americas, LLC*, 447 F.Supp.3d 99, 123 (S.D.N.Y. 2020) (quoting *Mihalik,* 715 F.3d at 110 n.8).

## V. Retaliation Under the ADA or Rehabilitation Act

"The *McDonnell Douglas* burden shifting analysis also applies to retaliation claims brought pursuant to the ADA" or Rehabilitation Act. *Rios v. Dep't of Educ.*, 351 Fed. Appx. 503, 505 (2d Cir. 2009). Accordingly, Plaintiffs first face the *de minimis* burden of presenting a prima facie case of retaliation.

> To establish a prima facie case of retaliation under the ADA, a plaintiff is required to show by a preponderance of the evidence that: (1) she participated in a protected activity under the ADA; (2) the defendant knew of the protected activity; (3) the plaintiff experienced an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action.

*Id.* A "causal connect" can be demonstrated "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

"Once a plaintiff establishes the prima facie case, the burden shifts to defendant 'to articulate a legitimate, non-retaliatory reason for the challenged employment decision." *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 250–51 (S.D.N.Y. 2015) (quoting *Treglia v. Town of Malius*, 313 F.3d 713, 721 (2d Cir. 2002). If the defendant satisfies this burden, the presumption of retaliation is eliminated, and "the plaintiff must point to evidence that would be sufficient to permit a rational fact finder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Treglia*, 313 F.3d at 721 (quoting Cifra v. G.E. Co., 252 F.3d 205, 216 (2d Cir. 2001)). At this step, "the plaintiff must prove 'that the desire to retaliate was the but-for cause of the challenged employment action,'" *Ya-Chen v. City Univ. of New York*, 805 F.3d 59, 70 (2d Cir. 2015) (quoting *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 351 (2013)). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer…This proof can include 'weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its actions." *Sivio v. Village Care Max*, 2020 WL 497513, at *14 (Jan. 31, 2020) (internal citations and quotations omitted). From this proof, "a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." *Zann Kwan v. Anadalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

## VI. Retaliation Under the NYSHRL and NYCHRL

To meet his initial burden, establishing a *prima facie* case of retaliation under the NYSHRL, "a plaintiff  must establish: (1) that [he] participated in an activity protected by the NYSHRL, (2) that [his] participation was known to [his] employer, (3) that [his] employer thereafter subjected [him] to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Benzinger*, 447 F.Supp.3d at 124.

"[T]o prevail on a retaliation claim under the NYCHRL, [a] plaintiff must show that [he] took an action opposing [his] employer's discrimination, . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action[.]" *Mihalik*, 715 F.3d at 112. The alleged protected activity need only have been a "motivating factor" of the adverse employment action. *Ottoson v. SMBC Leasing & Fin., Inc.*, No. 13-CV-01521, 2020 WL 881992, at *5 (S.D.N.Y. Feb. 24, 2020) (*citing Id.* at 115).

### DISCUSSION

## I. Melendez and Nicolaou Testimonies and Documentary Evidence

Defendant first objects to Judge Aaron's conclusion that "a reasonable jury could conclude that the School refused to provide at least some accommodations to Plaintiff." (ECF 78 at 17) (quoting R&R at 21). Defendant argues that, in making this finding, Judge Aaron ignored the testimonies of Melendez, Plaintiff's assistant, and of Julia Nicolaou, the WTC Program Administrator.

Melendez testified that she continued to assist Plaintiff when he began working in the WTC Program and that Defendant provided Plaintiff paper forms to use during his WTC Program work, undercutting Plaintiff's allegations that Defendant failed to accommodate

reasonably his struggles with data reporting. In her testimony, Nicolaou confirmed that Melendez continued to work for Plaintiff. (Nic. Tr. at 104). Relatedly, the record contains emails sent by Melendez during Plaintiff's final month of work, discussing her current and previous work correcting Plaintiff's notes, submitting his forms, taking his dictations and closing his charts. (Mel. Tr. at 136–39).

Defendant argues that this testimonial and documentary evidence is overwhelming and would prevent a reasonable jury from concluding that the School refused to provide Plaintiff an assistant and paper forms. (ECF 78 at 20). I disagree. Although this evidence supports Defendant's position that it provided Plaintiff with an assistant and paper files, accommodations he requested, it does not prove it. There is other relevant, contrary evidence in the record. For instance, the email chain Judge Aaron relied on could suggest to a factfinder that Lucchini did not plan to provide Plaintiff the accommodations he requested. In the chain, Lucchini is told that the WTC Program Administrator informed Plaintiff that he would be provided with paper forms and the dictation assistance of a patient coordinator. In response, Lucchini writes that he informed Plaintiff it was "his duty with no help from patient coordinator" and "If he cannot do it there is no other job and he can leave." (ECF No. 66-3). Although it is not evident what "duty" Lucchini is referring to, from this exchange, a reasonable factfinder could find that the School declined to provide Plaintiff with at least some accommodations.

At the summary judgment stage, it is not for district courts to "weigh the evidence or assess the credibility of witnesses[.]" *Jeffreys*, 426 F.3d at 551. Yet Defendant asks this court to do precisely that by more heavily weighting its witnesses and evidence simply because it contradicts Plaintiff's. I agree with Judge Aaron's conclusion that a reasonable jury could find that Defendant failed to provide at least *some* of the accommodations Plaintiff requested.

**II. Adverse Action Connection to Failure to Accommodate**

Defendant objects to Judge Aaron's finding that the record demonstrates sufficient evidence to withstand summary judgment of the required "connections" among the School's alleged failure to accommodate Plaintiff, Plaintiff's performance deficiencies, and Plaintiff's termination. (ECF No. 78 at 21–22). Defendant cites various documentary evidence demonstrating that after being told of his non-reappointment, Plaintiff wrote to his superiors seeking reconsideration of the decision, but neglected to mention his disability or the School's failure to accommodate him. (*Id.*) Instead, Defendant asserts, Plaintiff insisted that the School's data regarding his productivity was incorrect. (*Id.* at 2–3; 20–21; *see* Pl. Tr. 176–87).

Defendant argues that Plaintiff's failure to tie his non-reappointment to the School's failure to accommodate in these letters makes it clear that no connection exists between Plaintiff's inability to comply with his employer's productivity standards (the asserted reason for non-reappointment), and the School's alleged failure to accommodate him. (*Id.*) I disagree. The evidence Defendant relies on, at best, undermines Plaintiff's position that his performance deficiencies were connected to the School's failures to accommodate and his termination. It certainly does not contradict Plaintiff's version of events.

As discussed above, Plaintiff produced evidence that Defendant denied him at least some accommodations that could have assisted him in meeting his data entry deadlines and increasing his productivity. Further, as Defendant does not dispute, the record demonstrates that Plaintiff was not reappointed in substantial part because of his low productivity and failure to meet data entry and form deadlines. *See* (ECF No. 78 at 13; Lan. Tr. 83; Lucc Tr. 177, 179, 182, 190, 253). This evidence creates a genuine dispute as to whether the required connections exist. The evidence Defendant argues warrants summary judgment may weaken Plaintiff's evidence, but

that is a determination for factfinders, not a judge at summary judgment who cannot weigh evidence.

### III. Temporal Proximity

In recommending that Plaintiff's federal retaliation claim survive summary judgment, Judge Aaron emphasized that the time period between Plaintiff's alleged request for accommodation and non-reappointment notice was short. Judge Aaron explained that an inference of retaliatory intent can be shown where, as here, "the protected activity was closely followed in time by the adverse employment action." (R&R) (quoting *Seitz v. New York State*, No. 18-CV-04149, 2019 WL 4805257, at *11 (E.D.N.Y. Sept. 30, 2019).

Defendant objects to Judge Aaron's discussion of temporal proximity, arguing that temporal proximity alone is insufficient to show retaliation. (ECF 78 at 23) (citing *Simpson v. N..Y. State Dep't of Civil Servs.*, 166 F. App'x 499, 502 (2d Cir. 2006); *Grant v. Cont'l Casualty Co.*, No. 13 Civ. 5675, 2015 WL 1499724, at *12 (S.D.N.Y. Mar. 30, 2015). However, Defendant's argument and the cited cases are consistent entirely with the R&R. The cases cited by Defendant confirm that temporal proximity, although it may give rise to an inference of retaliation, *without more* "is insufficient to satisfy [a plaintiff's] burden to bring forward some evidence of pretext." *Grant*, 2015 WL 1499724, at *12 (alteration in original) (quoting *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). Judge Aaron did not state that temporal proximity was the *only* basis for concluding that Plaintiff had satisfied his burden. Presumably, Judge Aaron also considered Lucchini's June 18 email chain. That evidence coupled with the temporal proximity (only a few days), is sufficient to raise an issue of material fact.

## IV.  Continuing Course of Conduct

Defendant further contends that regardless of whether the temporal proximity of Plaintiff's request and termination creates a genuine dispute, summary judgment should be granted on Plaintiff' federal retaliation claims because the record demonstrates that the non-reappointment decision was set in motion prior to Plaintiff's June 18, 2013 request for accommodations. (ECF No. 78 at 24–25).

As Judge Aaron noted, Plaintiff received several poor performance reviews prior to his accommodation request. On August 3, 2012, Lucchini provided him a memorandum detailing problems with Plaintiff's documentation practices and lateness to clinical sessions. (ECF No. 55-1 at 73)[1]. The memorandum specifically referenced missing documents from the charts of Plaintiff's patients, as well as Plaintiff's failure to complete and close his electronic charts within 24 hours of a patient exam. The memo warned Plaintiff that future lateness and failure to comply with required documenting policies would "result in immediate disciplinary action up to an including termination of employment." (*Id.*). In March of 2018, Lucchini completed another evaluation of Plaintiff, rating him as "marginally meets expectations" and a 1, or "below expectations" in at least one area. (ECF No. 65-17).

Judge Aaron considered these poor reviews, but also considered Plaintiff's positive November 2012 performance appraisal from his direct supervisor, Dr. Jamie Szeinuk. (R&R at 5) (citing ECF No. 65-2). Plaintiff's direct supervisor gave him a rating of "meets expectations" in the area of "planning and organization," and "exceeds expectations" in "productivity." (ECF No. 65-2). Judge Aaron determined that a reasonable factfinder could conclude that Lucchini's

---

[1] Referring to ECF pagination.

poor reviews, especially when considered alongside Schroeder's appraisal, were not enough to establish a continuing course of conduct. (R&R at 23–24).

Defendant objects first to Judge Aaron's consideration of Szeinuk's positive performance review as a potential question of fact undercutting Defendant's argument that Plaintiff's termination resulted from a continuous course of disciplinary conduct. Specifically, Defendant argues that Judge Aaron overlooked caselaw holding that differences among supervisors' evaluations of a plaintiff do not demonstrate pretext, a negative performance evaluation following a positive evaluation of plaintiff is not evidence of pretext; and that a new supervisor is entitled to evaluate employees according to his or her own standards. *See* (ECF 78 at 26) (quoting *Forte v. Liquidnet Holdings, Inc*., No. 14 Civ. 2185, 2015 WL 5820976 (S.D.N.Y. Sept. 30, 2015); *Johnson v. New York City Dep't of Educ.*, 39 F. Supp. 3d 314 (E.D.N.Y. 2014); *Beers v. NYNEX Material Enters. Co*., 88 Civ. 0305, 1992 WL 8299, at *11 (S.D.N.Y. Jan. 13, 1992)).

As a preliminary matter, Judge Aaron was not considering Szeinuk's evaluation as evidence that the poor performance rationale for Plaintiff's discharge was pretextual. He considered the evaluation as evidence that might undermine Defendant's assertion that there was a demonstrated course of conduct of Plaintiff being disciplined for poor performance. But regardless, Defendant misreads the cited cases, which do not prohibit the consideration of this positive appraisal even in the pretext context. *Forte* holds that the disparity between supervisors' "respective assessments of Plaintiff's performance is insufficient, standing alone, to show pretext." 2015 WL 5820976 at *11. Similarly, *Johnson* provides that evidence of a negative performance evaluation following a positive evaluation, alone, will not establish pretext. *See* 39 F. Supp. 3d at 314. In *Beers*, the court determined that where Plaintiff had switched jobs and reported to a new manager, his positive performance reviews from his previous manager

18

regarding his previous position did not support an inference that the negative reviews he received

from his new manager were pretextual. 1992 WL 8229, at *11. In short, Judge Aaron was

entitled to consider Szeinuk's positive appraisal as *one factor* suggesting pretext. *See Thomas v.*

*iStar Fin., Inc.*, 438 F. Supp. 2d 348, 359–60 (S.D.N.Y. 2006).

Even without Szeinuk's positive appraisal, I still agree with Judge Aaron's conclusion

that there exists a question of fact as to whether Plaintiff's termination was the result of a course

of disciplinary conduct.

"It is well-settled that an adverse employment action cannot serve as the basis for a

retaliation claim if the action was set in motion before a plaintiff engaged in protected activity.

*Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 974 F. Supp. 2d 240, 262 (S.D.N.Y.

2013). In essence, "[i]f an employer's conduct before and after an employee complaint is

consistent, the post-complaint conduct is not retaliatory." *Wright v. N.Y.C. Off-Trac Betting*

*Corp.*, No. 05 Civ. 9790, 2008 WL 762196, at *5 (S.D.N.Y. Mar. 24, 2008).

Lucchini's memorandum threatens disciplinary action, but it does not indicate that such

action was in motion at the time. *See Murray v. Dutchess Cty Exec. Branch*, 2019 WL 4688602,

at *14 (S.D.N.Y. Sept. 25, 2019) (denying motion to dismiss where Defendant argued course of

conduct existed to bar retaliation claim where, prior to protected activity, employer sent Plaintiff

letter "indicat[ing] that discipline was not yet in motion but was still only a future possibility.").

Lucchini's poor performance review does allude to disciplinary action, but *two* instances of

performance critique, where only one threatens disciplinary action does not establish the type of

record of "gradual adverse job actions" that generally lead courts in this District to grant

summary judgment on retaliation claims. *See, Ladepo v. United Cerebral Palsy of New York*

*City, Inc.*, 2018 WL 4356726, at *9 (S.D.N.Y. Sept. 12, 2018) (summary judgment granted on

Title VII retaliation claim where prior to protected activity, Plaintiff had been counseled or disciplined multiple times during course of employment).

Based on the record, there is a genuine dispute as to whether a course of disciplinary conduct sufficient to terminate Plaintiff's federal retaliation claim exists.

## V. NYCHRL Retaliation Claim

The City Council's amendment, effective November 11, 2019, makes clear that requesting a reasonable accommodation is a protected activity under the NYCHRL. In June 2018 the committee introduced the amendment, and filed a committee report, which acknowledged that the several "recent rulings by the Appellate Division of the New York Supreme Court have adopted a highly restrictive view of the NYCHRL, excluding requests for reasonable accommodations from the list of protected activities." *See* June 18, 2018 Comm. Report, at 4, available at, http://legistar.council.nyc.gov/LegislationDetail.asp?ID=3474318&GUID=7D4A5818-4021-4732-85CD-33E55A34B282&Options=ID|Text|&Search=8-107.  Judge Aaron relied on these and other Appellate Division rulings to interpret the pre-amendment scope of the NYCHRL. In these cases, the Appellate Division courts concluded that requests for accommodations do not constitute protected activity for the purposes of an NYCHRL retaliation claim. *See, e.g., D'Amico v. City of New York*, 159 A.D. 3d 558, 558–59 (1st Dep't 2018); *Brook v. Overseas Media, Inc.*, 69 A.D. 3d 444, 445 (1st Dep't 2010); *Serdans v. New York & Presbyterian Hosp*., 112 A.D. 3d 449, 450–51 (1st Dep't 2013).

As Plaintiff point out, courts in this district have reached a different conclusion. First in 2014, in *Pacheco v. Park South Hotel, LLC*, the court held that Plaintiff's "requests for accommodation constitute[d] protected activity under the…NYCHRL." No. 12 Civ. 9127, 2014

WL 292348, at *4 (S.D.N.Y. Jan. 27, 2014). *Scorsonelli v. Madison Dentistry, P.C. et al* was decided next on November 14, 2019, but the case was filed in May of 2018. No. 18-cv-04269, 2019 WL 6032787, at *1 (S.D.N.Y. Nov. 14, 2019). The court again determined that Plaintiff's requests for accommodation were protected activity. *Id.* at *1 n.1. The decision did not reference the City Council's 2018 amendment, or retroactivity, and seems instead, to interpret the NYCHRL pre-amendment. *Id.* The court acknowledges that the New York State Appellate Division decisions addressing this issue had concluded that reasonable accommodation requests did not constitute protected activity. However, the court explained that "[t]here is reason to doubt the soundness of these decisions, however, given that the New York City Council has 'created a one-way ratchet, by which interpretations of state and federal civil rights statutes can serve only as a *floor* below which the City's Human Rights law cannot fall.'" *Id.* (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

Finally, *Xiang v. Eagle Enterprises, LLC*, was decided, also after NYCHRL took effect, but for conduct that occurred in April and June of 2018. No. 19 Civ. 1752, 2020 WL 248941 (Jan. 16, 2020). The court does not reference the amendment, retroactive application, or the conflict with New York State Appellate Division decisions. *Id.* at *9. Instead, the court again appears to interpret the pre-amendment NYCHRL, holding "[b]ased on the plain text of the NYCHRL, and in accord with the view of several other courts in this District, the Court concludes that [Plaintiff] has pled the bare minimum to establish that she engaged in protected activity under the NYCHRL." *Id.*

Plaintiff argues that Judge Aaron should have followed these three Southern District of New York cases. In particular, Plaintiff emphasizes that the New York Court Appellate Divisions run counter to the City Council's clear intent that protections under the NYCHRL be at

least as broad, if not broader than federal protections. *See* (ECF 76 at 2) (quoting *Mihalik*, 715 F.3d at 112).

Defendant counters that Judge Aaron and I are obligated to follow controlling state law, which, on this issue, appears to be the Appellate Division decisions relied on in the R&R.

"A federal court exercising supplemental jurisdiction over state law claims must apply the substantive law of the state." *Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 365 (S.D.N.Y. 2013) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Accordingly, because the Appellate Division opinions are the best representations we have of what New York law dictates in this context, it was appropriate for Judge Aaron to rely on them, and conclude that Plaintiff here failed to allege the protected activity required for his NYCHRL claim to survive summary judgment.[2]

To the extent Plaintiff further objects to Judge Aaron's conclusion that the 2018 NYCHRL amendment cannot be applied retroactively, that argument too fails. "[T]wo axioms of statutory interpretation" guide New York courts determining whether legislative enactments are due retroactive effect. *Clean Earth of North Jersey, Inc. v. Northcoast Maintenance Corp.*, 142 A.D.3d 1032, 1037 (2d Dep't 2016). "Amendments are presumed to have prospective application unless the Legislature's preference for retroactivity is explicitly stated or clearly indicated. However, remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose." *Matter of Gleason*, 749 N.E.2d 724, 726 (N.Y. 2001); *see Regina Metropolitan Co., LLC v. New York State Division of Housing*, 2020 WL 1557900, at *15 (N.Y.

---

[2] This Court lacks authority to certify this question to the New York Court of Appeals for further guidance. See N.Y.C.R.R. § 500.27(a) ("Whenever it appears to the Supreme Court of the United States, any United States Court of Appeals, or a court of last resort of any other state that determinative questions of New York law are involved in a case pending before that court for which no controlling precedent of the Court of Appeals exists, the court may certify the dispositive questions of law to the Court of Appeals.").

Apr. 2, 2020). "Other factors to consider include whether the Legislature has made a specific pronouncement about retroactive effect or conveyed a sense of urgency; whether the statute was designed to rewrite an unintended judicial interpretation; and whether the enactment itself reaffirms a legislative judgment about what the law in question should be." *Nelson v. HSBC Bank USA*, 87 A.D.3d 995, 997 (2d Dep't 2011).

The 2018 amendment contains no retroactivity provision, and there was no sense of urgency as the provision took 120 days to become effective. As to "whether the statute was designed to rewrite an unintended judicial interpretation," Plaintiff relies on the same committee report discussed above. The report notes that the proposed bill would "*affirm and clarify* that, rather than the protections being limited to opposing an unlawful discriminatory act, employees are indeed protected from retaliation when they request a reasonable accommodation." *See* June 18, 2018 Comm. Report, at 4, available at, http://legistar.council.nyc.gov/LegislationDetail.asp?ID=3474318&GUID=7D4A5818-4021-4732-85CD-33E55A34B282&Options=ID|Text|&Search=8-107. Despite this language, the actual text of the bill provides that it "amends" rather than clarifies the Administrative Code.

Based on this analysis, I agree with Judge Aaron that the 2018 amendment is not retroactive, and that under the previous version of the NYCHRL, a request for accommodation is not protected activity. Summary judgement is appropriate on Plaintiff's NYCHRL claim.

## CONCLUSION

I have reviewed de novo the contested portions of the R&R and the remainder for clear error. For the reasons provided above, I adopt the R&R in its entirely, denying summary judgment on counts one, two, three, four, five, and seven, and granting summary judgment on counts six and eight.

The parties are ORDERED to submit a joint status report in this matter by October 9, 2020.

**SO ORDERED.**

Dated: New York, New York
September 28, 2020

_____
Hon. Andrew L. Carter, Jr.
United States District Judge